IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GLEN ELLYN PHARMACY, ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.   09 C 2116 |
| ) | Judge Blanche M. Manning |
| ) | |
| PROMIUS PHARMA, LLC and ) | |
| MEDICAL COMMUNICATIONS ) | |
| TECHNOLOGY, INC, and JOHN ) | |
| DOES 1-10, ) | |
| DefendantS. ) | |

### MEMORANDUM AND ORDER

Plaintiff Glen Ellyn Pharmacy brought this putative class action against Promius Pharmacy and Medical Communications Technology, Inc. ("MCT") alleging a violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), and a state law claim for conversion. According to Glen Ellyn, Promius used co-defendant MCT to transmit unsolicited and unauthorized faxes for the purpose of advertising Promius' products and services. Promius has moved for summary judgment arguing that it cannot be held vicariously liable for the transmission of unsolicited faxes. For the reasons stated below, Promius' motion is denied.[1]

**I.     Facts**

Glen Ellyn Pharmacy is a corporation located in Glen Ellyn, Illinois. Promius is a pharmaceutical company that develops, markets and sells dermatological and other products.

On February 3, 2009, Glen Ellyn received a one-page facsimile, the transmission of which Glen Ellyn alleges violated the TCPA, and the ICFA. Glen Ellyn also alleges that by sending the plaintiff and the putative class members unsolicited faxes, Promius and MCT converted to their own use ink or toner and paper belonging to the plaintiff and the putative class members.

Defendants Promius and MCT entered into a Master Services Agreement as of July 1, 2008. The Agreement states that Promius was retaining MCT to "provide medical communications services, specifically the intake, processing, dissemination of scientific, medical

---

[1] In ruling on Promius' summary judgment motion, the court has considered the arguments in the parties' supplemental filings. *See* Dkt. ##39 and 41.

and technical information regarding Promius products to healthcare professional and consumers in the United States. . . ." Agreement at 1. Pursuant to Section 1 of the Agreement, all work to be performed by MCT was on a "project basis" and for each project, the parties were to enter into a Project Work Order ("PWO").

Section 4.1 of the Agreement is entitled "Independent Contractor Status" and states in relevant part:

> For purposes of this Agreement and all Services to be provided hereunder, MCT shall not be considered a partner, co-venturer, agent, employee or representative of Promius, but shall remain in all respects an independent contractor. Except as expressly set forth in a PWO, no officer, director, employee, agent or consultant retained by MCT to perform work on Promius' behalf under this Agreement or any PWO shall be deemed to be an employee of Promius. Neither party hereto shall have any right or authority to make or undertake any promise, warranty or representation, to execute any contract, or otherwise assume any obligation or responsibility in the name of the other party.

In Section 8, MCT warranted that:

> [MCT] will perform the Services in a manner commensurate with professional standards and expertise generally applicable to its industry; and shall be in compliance with all applicable laws and regulations related to the Services hereunder.

On October 2, 2008, Promius and MCT executed Project Work Order Number 2 in which the scope of services section indicated that "MCT will render . . . services as may be necessary to complete in a professional manner blast fax notification services targeting independent pharmacies, chain pharmacy headquarters, and chain retail pharmacies . . . ." The work order provided that MCT was to transmit the relevant advertisement to approximately 50,000 recipients. Promius designated the general categories of fax recipients including independent pharmacies, chain pharmacy headquarters, and chain retail pharmacies. Promius did not ask and claims it had no understanding as to how the list of recipient fax numbers was compiled by MCT. Moreover, Promius did not ask that any recipient be excluded from the list. Promius did not ask or instruct MCT to contact persons in order to determine if the recipient consented to receiving the fax nor was Promius informed as to whether the recipients were contacted and does not know if they were contacted. Promius ultimately paid MCT for the transmission of 53,795 faxes.

According to Vanessa Brill, an attorney and senior counsel for Promius who was personally involved in the drafting and negotiation of Project Work Order No. 2, Promius did not direct, control or participate in the actual transmission of any facsimiles pursuant to Project Work Order No. 2. Nor did Promius, according to Brill, direct or control the means or methods used by MCT to transmit any facsimiles. Glen Ellyn disputes these contentions as discussed in more

detail in the Analysis section below. Brill also attests that Promius did not provide a list of facsimile numbers to MCT, and did not direct or control the means or methods used by MCT to obtain any facsimile numbers. Brill further states that at her insistence, the following language was inserted into Project Work Order No. 2:

> MCT will also comply with all applicable laws and regulations in performing the Services, including, without limitation, the Federal Junk Fax Protection Act of 2005 (47 U.S.C. 227).

Finally, Brill states in her affidavit that she had no knowledge until the filing of this lawsuit that Glen Ellyn or anyone else was sent an unsolicited facsimile advertisement. She further attests that if Glen Ellyn did indeed receive a facsimile, it was transmitted by MCT and not Promius, and was transmitted without Promius' knowledge, consent or approval. Again, Glen Ellyn denies this last statement, notes that Brill did not provide it with a list of recipients such that MCT could limit the transmissions to current clients of Promius, and asserts that Brill knew or should have known that MCT was not going to obtain permission to send each of the 50,000 faxes.

The executed copy of Project Work Order No. 2 bears Brill's initials "VMB" on each page to reflect that she reviewed and approved the agreement on behalf of Promius. Project Work Order No. 2 is the second of six Project Work Orders entered into between Promius and MCT and is the only Project Work Order that involved faxing.

## II. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the movant's asserted facts. *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924 (7th Cir. 2004).

## III. Analysis

### A. Vicarious Liability

#### 1. *TCPA*

Promius first argues that it cannot be vicariously liable for the alleged violation of the

TCPA. Specifically, it contends that the TCPA is a statutory tort created by Congress which incorporates general tort-related vicarious liability rules. *Meyer v. Holley*, 537 U.S. 280, 285 (2003)("[W]hen Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules"). According to Promius, because the undisputed facts establish that MCT, the party that sent the fax, was an independent contractor, Promius cannot be liable to Glen Ellyn for any TCPA damages associated with the transmission of the fax.

However, as Glen Ellyn notes, the Federal Communications Commission, the entity charged with issuing regulations to implement the TCPA, has concluded that "the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements. . . ." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, FCC 95-310, CC Docket No. 92-90, 78 Rad. Reg. 2d (P & F) 1258, 10 F.C.C.R. 12391, 10 FCC Rcd. 12391, 1995 WL 464817, ¶¶ 34-35 (Aug. 7, 1995). The relevant excerpt states as follows:

> 34. Unsolicited Facsimile Advertisements. Some petitioners request clarification of whether responsibility for compliance with the ban on unsolicited facsimile advertising and with the facsimile identification requirement lies with the entity or entities on whose behalf such messages are sent or with service providers ("fax broadcasters"). Generally these commenters are fax broadcasters who disseminate facsimile messages for their clients. They favor excluding any fax broadcaster, whether or not a common carrier, from responsibility for compliance with the rules, and assigning ultimate responsibility to the author or originator of the facsimile message. The commenters contend that the Report and Order indicates only that "carriers" would not be held liable, and did not indicate whether service providers who are not carriers would also be exempt from such requirements.
>
> 35. Decision. We clarify that the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule. This interpretation is consistent with the TCPA's legislative history, and with our finding in the Report and Order that carriers will not be held liable for the transmission of a prohibited message. We emphasize, however, that facsimile broadcast services must ensure that their own identifying information appears on fax broadcasts. We also point out that in cases where a facsimile is transmitted on behalf of multiple entities, the fax broadcaster must assure that each such entity is identified separately in accordance with the statutory requirement.

Without citing to any authority, Promius responds that the "Commission's decision involved situations where an advertiser utilized a fax broadcaster to transmit facsimiles and the Commission concluded that the fax broadcaster would not be held liable for merely being the conduit of the message." Reply at 10. Promius concludes that therefore, "Plaintiff's reliance on

Release No. 95-310 is misplaced." *Id.* It is unclear to the court what point Promius seeks to make. It appears that Promius is arguing that because MCT agreed to be an independent contractor and abide by all of the relevant laws and regulations, including the TCPA, the Commission's statement is inapplicable in the instant case because MCT was more than a mere "conduit" of the message.

This court disagrees with Promius' interpretation of the FCC's statement, which is clear and unambiguous–"We clarify that the entity or entities on whose behalf facsimiles are transmitted are *ultimately liable* for compliance with the rule banning unsolicited facsimile advertisements, and that fax broadcasters are not liable for compliance with this rule." Release No. 95-310 of the Federal Communications Commission, ¶35 (emphasis added). The statement does not include any language pointing to the qualification that Promius suggests. Indeed, other courts have concluded that independent contractor status of the fax broadcaster does not shield the person on whose behalf the fax was sent from liability. *See Worsham v. Nationwide Ins. Co.*, 772 A.2d 868, 878 (Md. Ct. Spec. App. 2001)("We conclude that the existence of an independent contractor relationship between Nationwide and Gerety would not, in itself, insulate Nationwide from liability under the TCPA. The TCPA reaches not only the entity making the telephone solicitation, but also any entity "on whose behalf" such calls are made.")(citation omitted). *See also Hooters of Augusta v. Nicholson*, 537 S.E.2d 468 (Ga. Ct. App. 2000)("[W]e conclude that an advertiser may not avoid liability under the TCPA solely on the basis that the transmission was executed by an independent contractor")(citing Release No. 95-310 of the Federal Communications Commission, CC Docket No. 92-90, 10 FCC Rcd 12391 (1995), Paras. 34-35)("[Under the TCPA], the entity or entities on whose behalf facsimiles are transmitted are ultimately liable for compliance with the [TCPA's] rule banning unsolicited facsimile advertisements."); *Travel 100 Group v. Empire Cooler Servs., Inc.*, 03 CH 14510, Memorandum Opinion and Order on Plaintiff's Motion for Partial Summary Judgment (Cir. Ct. of Cook County, Chancery Division Aug. 15, 2006)(concluding based on FCC Statement No. 95-310 and one of the stated purposes of the TCPA that advertiser had a "non-delegable" duty to ensure that its advertisements were faxed only to legal recipients and noting, "as a matter of policy," that advertiser should not be allowed to "shield itself from liability" by outsourcing the actual transmission of the fax to a fax broadcaster).

Because Promius cannot escape liability under the TCPA simply by establishing that MCT was an independent contractor, the court denies this aspect of Promius' motion for summary judgment.

### 2. *ICFA and Conversion*

The elements of a fraud claim under § 2 of the ICFA are: (1) a deceptive act or practice by the defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) the occurrence of the deception in the course of conduct involving trade or commerce. *Saltzman v. Enhanced Services Billing, Inc.*, 811 N.E.2d 191, 201 (Ill. App. Ct. 2003)(citation omitted). In order to succeed on a claim of conversion, a plaintiff must establish that: (1) he has a right to the property; (2) he has an absolute and unconditional right to the immediate possession of the

property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. *Kovitz Shifrin Nesbit, P.C. v. Rossiello*, --- N.E.2d ----, 2009 WL 1905235, at *3 (Ill. App. Ct. Jun. 30, 2009)(citation omitted).

Promius asserts that because MCT was acting as an independent contractor, it cannot be held vicariously liable for any state law violations based on the transmission of the faxes. *Petrovich v. Share Health Plan of Illinois, Inc.*, 719 N.E.2d 756 (1999) ("[a]s a general rule, no vicarious liability exists for the actions of independent contractors"). In determining whether a person or entity is an independent contractor, the Illinois Supreme Court has noted that:

> An independent contractor is defined by the level of control over the manner of work performance. "An independent contractor is one who undertakes to produce a given result but in the actual execution of the work is not under the orders or control of the person for whom he does the work but may use his own discretion in things not specified * * * [and] without his being subject to the orders of the [person for whom the work is done] in respect to the details of the work."

*Horwitz v. Holabird & Root*, 816 N.E.2d 272, 279 (Ill. 2004)(some citations omitted). Promius contends that MCT was an independent contractor because Promius did not direct or control MCT's actions with respect to the transmission of the faxes. According to Promius, the following facts establish that MCT was acting as an independent contractor:

- Section 4.1 of the MSA provides that MCT was an independent contractor and was not Promius' "partner, co-venturer, agent, employee or representative";
- Section 8 of the MSA requires MCT to comply with "all applicable laws and regulations related to the Services hereunder";
- With respect to the facsimiles sent pursuant to Project Work Order No. 2, MCT was specifically required to comply with the "Federal Junk Prevention Act of 2005 (47 U.S.C. 227)"
- Promius contends it did not control, direct or participate in the actual transmission of any facsimiles nor did Promius direct or control the means or methods used by MCT to transmit any facsimiles
- Promius further notes that it did not provide the fax numbers to MCT to which the fax was to be sent

Promius argues that to the extent that any of the facsimiles sent by MCT on Promius' behalf constituted a violation of the ICFA (and thus breached the terms of Project Work Order No. 2) or constituted conversion, MCT's actions were outside of the scope of the clearly-defined authority. For all of these reasons, Promius asserts it is not vicariously liable for any alleged violation of the ICFA or the tort of conversion.

Page 6

In response, Glen Ellyn asserts that MCT was acting pursuant to direction by Promius. Specifically, it contends that a Promius employee created the advertisement that was sent by MCT (with the exception of the language at the bottom of the letter that "If you no longer wish to receive fax messages from this sender, please call (888) 739-4920, enter extension 1681 and follow the voice prompts"), and that several other Promius employees may have had limited input into the creation of the advertisement. It also notes that Promius designated the target audience to whom the fax was to be sent. Glen Ellyn further asserts that Promius did not instruct MCT to blast fax only to entities with an established business relationship with Promius and did not provide Promius with a list of those entities. Finally, Glen Ellyn argues that Promius could not have reasonably thought that MCT was going to obtain authorization from each of the fax recipients because Promius only paid MCT 15 cents per fax sent and MCT sent out 53,000 faxes. Thus, Glen Ellyn asserts that "[t]here was not adequate time or compensation to seek authorization from such a group." Response at 3.

Based on the undisputed facts, the court concludes that MCT was an independent contractor under Illinois law. Project Work Order No. 2 expressly specified that MCT was an independent contractor. Moreover, while Promius created the facsimile at issue and generally designated the target audience, Glen Ellyn does not point to any evidence disputing that Promius did not exercise control over the specific recipients of the facsimile or that Promius did not direct or control the means or methods used by MCT to transmit the facsimiles. While Glen Ellyn faults Promius for telling MCT to blast fax to only entities that had an established business relationship with Promius, and for not providing a list of recipients to MCT, Glen Ellyn fails to articulate how such failures support its assertion that MCT was not an independent contractor.

However, "[t]hat someone is an independent contractor does not bar the attachment of vicarious liability for her actions if she is also an agent." *Id.* (*citing Petrovich v. Share Health Plan of Illinois, Inc*., 188 Ill.2d 17, 31, 241 Ill.Dec. 627, 719 N.E.2d 756 (1999) ("[a]s a general rule, no vicarious liability exists for the actions of independent contractors. Vicarious liability may nevertheless be imposed for the actions of independent contractors where an agency relationship is established").

"The test of agency is whether the alleged principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Oliveira-Brooks v. Re/Max Intern., Inc*., 865 N.E.2d 252 Ill. App. Ct. 2007)(citation omitted). *See also Santana v. State Bd. of Elections*, 864 N.E.2d 944, 952 (Ill. App. Ct. 2007)("A principal-agent relationship exists when the principal has the right to control the manner in which the agent performs his work and the agent has the ability to subject the principal to personal liability." )(citation omitted). Moreover:

> When an act is performed for the benefit of another by a person without authority, or by an authorized agent in excess of his authority, the person for whose benefit the act was done may ratify the act. Ratification of an unauthorized act is tantamount to an original authorization, and confirms what was originally

unauthorized.

> A client ratifies the actions of his attorney by not repudiating the acts once he has knowledge of them, or by accepting the benefits of those acts. "Ratification need not be express; it may be inferred from surrounding circumstances, including long-term acquiescence, after notice, to the benefits of an allegedly unauthorized transaction."

*Kulchawik v. Durabla Mfg. Co.*, 864 N.E.2d 744 (Ill. App. Ct. 2007)(citations omitted). "If there is no benefit, ratification will not be implied." *Horwitz*, 816 N.E.2d at 280 (citation omitted).

Alhough the court has concluded that MCT was an independent contractor, Promius fails to address the agency issue in its motion for summary judgment, and, as a result, Glen Ellyn does not address the agency issue in its response. Because Promius has failed to address the agency issue, which is part and parcel of the vicarious liability issue, the court denies Promius' motion for summary judgment on the state law claims.

## III. Conclusion

For the reasons stated herein, Promius' motion for summary judgment [30-1] is denied. Plaintiff's motion for leave to file response to new matters in defendant's summary judgment reply [39] is granted. Status hearing set to September 29, 2009 at 11:00 a.m.

**ENTER:**

**Date**: September 11, 2009

_____
**Blanche M. Manning**
**United States District Judge**